# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2021

Lyle W. Cayce
Clerk

No. 20-10262

Dillon Gage, Incorporated of Dallas,

*Plaintiff—Appellant*,

*versus*

Certain Underwriters at Lloyds Subscribing to Policy
No EE1701590,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-cv-01555

Before Barksdale, Southwick, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Dillon Gage, Inc., incurred a million-plus-dollar loss after a thief forged checks and intercepted two shipments of gold coins. Dillon Gage filed an insurance claim, and the underwriters denied coverage under a policy provision that excluded coverage for any loss incurred "consequent upon" handing over insured property to any third party against payment by a fraudulent check. Dillon Gage insists that its loss was not consequent upon the bad checks because UPS, which handled the shipping, made more significant and immediate errors that caused the loss. In granting summary

No. 20-10262

judgment, the district court disagreed and concluded that the loss was indeed consequent upon Dillon Gage accepting the fraudulent checks and shipping the coins. Because this case presents determinative questions of Texas law for which there is no applicable precedent, we CERTIFY those questions to the Supreme Court of Texas.

> CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE.
>
> TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I.

The style of the case in which this certification is made is *Dillon Gage Inc. v. Certain Underwriters at Lloyds Subscribing to Policy No EE1701590*, No. 20-10262, in the United States Court of Appeals for the Fifth Circuit. The case is on appeal from the United States District Court for the Northern District of Texas. Federal jurisdiction is based on diversity of citizenship.

## II.

Dillon Gage deals in gold coins and other precious metals. And due to the immense value of its merchandise, Dillon Gage purchased an insurance policy from the underwriters. The terms of that policy came into dispute after a thief used fraudulent checks to steal roughly $1.2 million worth of merchandise. In January 2018, Dillon Gage received an order it thought to be from Kenneth Bramlett, an orthopedic surgeon from Alabama. But unbeknownst to Dillon Gage, a criminal posing as Kenneth Bramlett had placed the order and provided Bramlett's correct home address, correct social security number, and a scan of an Alabama driver's license of a person purporting to be Bramlett. This thief had managed to steal Kenneth's and his

wife Laurie's identities and to intercept a box of their personal checks from the mail.

The January order was for $549,000 worth of gold coins. Once the check (purportedly signed by Laurie Bramlett) cleared, Dillon Gage shipped the order via UPS and emailed the tracking information to the email address provided. Shortly after the origin scan, UPS received an instruction to hold the package at a UPS facility instead of delivering it to the Bramletts' address. Dillon Gage contends that UPS was not supposed to allow rerouting without its consent. UPS's alleged mistakes do not end there. An unknown individual retrieved the package, without signing for it, only three minutes after it arrived at the UPS facility.

Having successfully stolen the coins, the thief placed another order for $655,000 worth of coins the same day. That check cleared, and ten days later, the thief intercepted the second rerouted package. Shortly after the second order's interception, Laurie Bramlett discovered the fraud and Dillon Gage was soon without both the $1,204,000 worth of gold coins it had shipped and the $1,204,000 it had received from the Bramletts.

Dillon Gage filed an insurance claim. The underwriters, however, said that losses consequent upon fraudulent payments are excluded from coverage but noted that limited coverage of $12,500 applied due to an exception to the fraudulent-payments exclusion that restores limited coverage for a loss incurred "as a direct result of any fraudulent or dishonest payment(s)." Dillon Gage refused the limited payment and sued the underwriters for breach of contract and for violations of Chapters 541 and 542 of the Texas Insurance Code.

The parties filed cross motions for summary judgment on all claims based on stipulated facts. Though the parties agree on the facts, they have divergent views of the law and the meaning of the policy's terms. The district

No. 20-10262

court sided with the underwriters and granted their motion for summary judgment and dismissed all of Dillon Gage's claims.

## III.

Under Texas law, the insured has the burden of establishing that the policy potentially provides coverage, but the insurer has the burden to prove the applicability of an exclusion that would allow it to deny coverage. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). Broadly speaking, the million-dollar question in this case is whether the policy covers the loss, but answering that question requires addressing one, possibly two, narrower questions. The first is whether Dillon Gage's losses were sustained consequent upon handing over insured property to UPS against a fraudulent check, causing the policy exclusion to apply. If the answer is yes, the second question is whether UPS's alleged errors are an independent, rather than a concurrent, cause of Dillon Gage's losses, so as to make the losses covered, despite the fraudulent-payments exclusion.

## A.

The policy covers the loss of insured property during shipping. But the fraudulent-payments exclusion "excludes any claim . . . where the loss has been sustained by the Insured *consequent upon* handing over such Insured property *to any third party* against payment by [fraudulent check]." (emphasis added).

The full provision reads:

Notwithstanding anything contained herein to the contrary, this contract excludes any claim in respect of the property insured hereunder, where the loss has been sustained by the Insured consequent upon handing over such Insured property to any third party against payment by:

4

No. 20-10262

> • Cheque, Banker's Draft, or any other form of Money Order, where such Cheque, Banker's Draft or other form of Money Order, shall prove to be false, fraudulent or otherwise invalid or uncollectable for any reason whatsoever. . . .

Since the contract does not define consequent upon, Texas law instructs courts to look to the term's plain meaning and resolve ambiguities in favor of the insured. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602–03 (Tex. 2015). The dictionary definitions offer little help. The Oxford English Dictionary defines "consequent" as "following as an effect or result; resulting." Consequent, Oxford English Dictionary (2nd ed. 1989). The phrase "consequent upon" also appears in the definitions of "follow" and "after" in the Oxford Dictionary.

But Black's Law Dictionary offers a more nuanced definition. It defines "consequent" as "[o]ccurring as the natural result or necessary effect of a particular action, event, or situation; following as a natural result, a necessary effect, or a logical conclusion." Consequent, Black's Law Dictionary (11th ed. 2019). And the Collins Dictionary defines "consequent" as "happening as a direct result of an event or situation" but then defines "consequent on" simply as "following as a result of."[1]

The parties use these definitions to support a spectrum of potential meanings. On one end of the spectrum, there is the more inclusive reading that consequent upon equates to but-for causation. In other words, if the loss would not have occurred but for Dillon Gage handing over the property to

---

[1] Consequent, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/consequent (last accessed Mar. 19, 2020); Consequent on, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/consequent-on (last accessed Mar. 19, 2020).

UPS against a fraudulent check, then the exclusion applies and there would be no coverage. On the opposite end of the spectrum, there is the reading that consequent upon limits the exclusion to situations where handing over the property against a fraudulent check was the most direct cause of the loss. For example, a situation where the package was sent directly to the thief with no alleged errors by UPS. In between these two poles lies the common-law concept of proximate cause, which under Texas law requires foreseeability and causation in fact. *See City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex. 1987). "Cause in fact" means that the conduct in question must have been a substantial factor in bringing about the injury and that the injury would not have occurred absent the conduct. *Id.*

The underwriters settle on the idea that consequent upon equates to but-for causation, whereas Dillon Gage maintains that consequent upon imposes a limitation falling somewhere between mere but-for causation and common-law proximate causation. Dillon Gage's proposed reading requires a causation standard akin to Texas's "cause-in-fact" requirement but with no element of foreseeability.

Texas law requires courts to adopt the insured's reading of the contract so long as it is reasonable and to do so even if a more reasonable reading exists. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). But that rule potentially creates two problems in addition to defining the term consequent upon. First, even if adopted, Dillon Gage's proposed reading may not afford coverage because it is unclear whether shipping against the fraudulent checks would be considered a substantial factor in causing the loss under Texas law. *See City of Gladewater*, 727 S.W.2d at 517. Second, Dillon Gage's proposed reading may not be considered reasonable when read alongside other parts of the policy.

No. 20-10262

The latter of these two problems arises out of Texas law's requirement that a distinct phrase in a policy be read in the context of the whole policy, with each clause and phrase being used to help interpret the other. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006). The policy's use of phrases like "any third party" and "any reason whatsoever" implies that Dillon Gage and the underwriters may have contemplated situations, like this one, where the insured property would pass through an intermediary, like UPS, before falling into the hands of a check-forging thief.

The Texas Supreme Court has neither interpreted the phrase consequent upon nor interpreted an analogous phrase in an analogous contract. So we ask for the Texas Supreme Court's assistance in defining the scope of the policy's exclusion.

## B.

If the fraudulent-payments provision excludes coverage, then another question arises. Under Texas law, when a covered event and an excluded event each independently cause the loss, separate and independent causation exists, and the insurer must provide coverage. *JAW The Pointe*, 460 S.W.3d at 608. But when excluded and covered events combine to cause a loss and the two causes cannot be separated, concurrent causation exists, and the exclusion is triggered. *Id.* If the fraudulent-payments provision excludes coverage, the question of whether UPS's alleged errors are considered an independent cause under Texas law must be answered. Once again, there is no Texas Supreme Court case directly on point, so we ask for assistance on this question should it need to be answered.

## IV.

Consistent with our respect for federalism and the authoritative role of state supreme courts in issuing binding interpretations of state law, while simultaneously respecting the parties' choice of a federal forum by reserving

7

No. 20-10262

for this Court the final power of judgment, we hereby certify, on our own motion, the following determinative questions of law to the Supreme Court of Texas:

1.  Whether Dillon Gage's losses were sustained consequent upon handing over insured property to UPS against a fraudulent check, causing the policy exclusion to apply.

And if that answer is yes:

2.  Whether UPS's alleged errors are considered an independent cause of the losses under Texas law.

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified. The record in this case and copies of the parties' briefs are transmitted herewith. We retain this appeal pending response from the Supreme Court of Texas.