# Supreme Court of Texas

No. 21-0312

Dillon Gage Incorporated of Dallas,

*Appellant*,

v.

Certain Underwriters at Lloyds Subscribing to
Policy No. EE1701590,

*Appellee*

On Certified Questions from the
United States Court of Appeals for the Fifth Circuit

**Argued September 30, 2021**

JUSTICE BLAND delivered the opinion of the Court.

A gold-coin dealer purchased insurance to cover its shipments against physical loss. The policy excluded losses "consequent upon" the dealer's handing over its coins to another against a fraudulent check. A thief paid the dealer for two shipments of coins using fraudulent checks. After the checks initially cleared, the dealer shipped the coins and sent the shipment tracking information to the thief. Using this tracking information, the thief successfully requested that the shipper reroute

the coins from their initial destination to a pickup facility. Ultimately, the dealer recovered neither the funds it was owed on the checks nor the gold coins it had shipped.

In the dealer's suit against its insurance carrier, the Fifth Circuit certified two questions to us: whether the dealer sustained its loss "consequent upon" handing over the property against fraudulent checks, and if so, whether the shipper's allegedly negligent rerouting of the shipment is an independent cause of the loss under Texas common law.

We answer, yes, the dealer sustained its loss consequent upon handing over the property against fraudulent checks, and, no, the shipper's alleged negligence in rerouting the shipment was not an independent cause of the loss.

**I**

Dillon Gage Incorporated of Dallas is a gold-coin and precious-metal dealer. In January 2018, a thief posing as Kenneth Bramlett opened an account with Dillon Gage. The thief supplied his or her own email address and a fictitious driver's license, together with Bramlett's correct home address.

The thief placed an order with Dillon Gage for $549,000 worth of gold coins the day after opening the account. The thief paid with a stolen check and forged Bramlett's wife's signature. After the check provisionally cleared, Dillon Gage shipped the coins to Bramlett's home address, but it sent the United Parcel Service's tracking information to the thief's email address.

A few minutes after UPS retrieved the package from Dillon Gage, the thief entered the shipment tracking information into UPS's online

2

customer service system and rerouted the shipment. The thief requested that UPS hold the coins at a facility for pickup. Dillon Gage maintains that it had instructed UPS that it should not reroute shipments absent Dillon Gage's consent.

Someone other than the Bramletts collected the coins at the UPS facility. The same day, the thief placed a second order with Dillon Gage, this time for $655,000 worth of gold coins. The thief paid with a second fraudulent check and intercepted the coins in the same manner as the first shipment. Meanwhile, the Bramletts discovered and reported the identity theft and check fraud. Their bank dishonored the fraudulent checks made out to Dillon Gage, resulting in a loss to Dillon Gage of $1,204,000.

Dillon Gage made claims under its policy with Underwriters,[1] seeking to recover $1,185,444.30 for the value of the coins. The policy covers the "physical loss" of insured property "whilst being shipped via postal or courier transit."

The policy, however, has an "Invalid Payments Exclusion Clause." This exclusion clause limits liability for property losses "consequent upon" handing over insured property "to any third party" against payment by fraudulent check:

> . . . this contract excludes any claim in respect of the property insured hereunder, where the loss has been sustained by the Insured consequent upon handing over such Insured property to any third party against payment by:
> - Cheque, Banker's Draft, or any other form of Money Order, where such Cheque, Banker's Draft

---

[1] Certain Underwriters at Lloyds Subscribing to Policy No. EE1701590.

3

or other form of Money Order, shall prove to be false, fraudulent or otherwise invalid or uncollectable for any reason whatsoever.

Based on this exclusion, the Underwriters denied coverage for all but $12,500. The $12,500 represents the policy's limit under an "Invalid Payments Extension Clause." The extension clause provides coverage "[n]otwithstanding the Invalid Payment Exclusion Clause" for "physical loss of [an] insured interest as a direct result of any fraudulent or dishonest payment(s)."

Dillon Gage sued the Underwriters in Texas state court, claiming breach of contract and violations of the Texas Insurance Code. The Underwriters removed the suit to the United States District Court for the Northern District of Texas. The parties each moved for summary judgment on agreed facts. The district court granted summary judgment in favor of the Underwriters, interpreting "consequent upon" to mean but-for causation.[2] The district court further determined that UPS's alleged negligence was not an independent cause of the loss under our decision in *JAW The Pointe v. Lexington Insurance*.[3] Because UPS's negligence did not create an independently covered physical loss, it ruled, the invalid payments exclusion remained in effect.[4]

---

[2] *Dillon Gage Inc. of Dallas v. Certain Underwriters at Lloyd's*, 440 F. Supp. 3d 587, 591–92, 595 (N.D. Tex. 2020).

[3] *Id.* at 593–94 (citing 460 S.W.3d 597 (Tex. 2015)).

[4] *Id.* at 594.

4

Dillon Gage appealed the district court's decision to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit certified the following questions to us:

1. Whether Dillon Gage's losses were sustained consequent upon handing over insured property to UPS against a fraudulent check, causing the policy exclusion to apply.

And if that answer is yes:

2. Whether UPS's alleged errors are considered an independent cause of the losses under Texas law.[5]

We accepted the certified questions.[6]

## II

We interpret insurance policies using the rules of contract construction.[7] We determine the parties' intent through the terms of the policy, giving words and phrases their ordinary meaning, informed by context.[8] If the parties offer reasonable but conflicting interpretations, we adopt the construction that favors coverage.[9]

The parties offer conflicting interpretations of the phrase "consequent upon." Dillon Gage argues that the phrase requires a

---

[5] *Dillon Gage, Inc. of Dallas v. Certain Underwriters at Lloyds Subscribing to Policy No EE1701590*, 992 F.3d 401, 405–06 (5th Cir. 2021).

[6] Tex. Const. art. V, § 3-c(a); Tex. R. App. P. 58. The policy is expressly governed by Texas law.

[7] *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

[8] *Id.*

[9] *Id.*

stringent causal connection, more like substantial-factor causation.[10] In this case, it argues, the fraudulent check merely furnished a condition that made the loss possible—UPS's unauthorized rerouting of the shipment eclipsed the fraudulent check as the substantial cause of the loss.[11] In support, Dillon Gage points to the Black's Dictionary definition of "consequent": "Occurring as the natural result or necessary effect of a particular action, event, or situation; following as a natural result, a necessary effect, or a logical conclusion."[12] Dillon Gage also contrasts the policy's use of "consequent upon" with the use of "arising out of" in other clauses. "Arising out of" is a term that connotes but-for causation.[13]

The Underwriters respond that Dillon Gage's proposed standard departs from the ordinary meaning of "consequent upon," which does not indicate a direct causal connection, as well as from the dictionary authorities Dillon Gage cites.

---

[10] *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995) (abrogated by *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)) (describing substantial-factor causation); *see also Mays v. Chevron Pipe Line Co.*, 968 F.3d 442, 447–48 (5th Cir. 2020) (interpreting statute with "occurring as the result of" to require substantial nexus or significant causal link between defendant's conduct and plaintiff's injury).

[11] *See Union Pump Co.*, 898 S.W.2d at 776 (holding no substantial-factor causation existed from a fire when plaintiff's fall occurred after fire was extinguished).

[12] *Consequent*, Black's Law Dictionary (11th ed. 2019).

[13] *See Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." (quoting *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999) (internal citation omitted)).

6

We conclude that Dillon Gage's proffered interpretation is unreasonable. The ordinary meaning of "consequent upon" is "following as a result or effect."[14] Neither this ordinary meaning nor the Black's definition Dillon Gage cites admits to a more stringent causal connection than but-for causation.

Reading "consequent upon" in the context of the rest of the policy does not make Dillon Gage's interpretation more reasonable. In *Utica National Insurance Co. of Texas v. American Indemnity Co.*,[15] the Court contrasted the policy's use of "due to" with "arising out of" to conclude that the former must invoke "a more direct type of causation." *Utica* concerned two variations in causal phrasing. The policy here, in contrast, has at least seven:

- "loss . . . of whatsoever nature directly or indirectly caused by, *resulting from or in connection with* any act of terrorism";
- "expense *directly or indirectly caused by or contributed to by or arising from* the use or operation" of a computer virus;
- "losses *arising from* . . . [w]ear and tear";
- "damage *directly or indirectly occasioned by, happening through or in consequent of* war";
- "… unless a loss arises *as a direct consequence of* an event not excluded under this insurance";
- "loss . . . *as a direct result of* any fraudulent or dishonest payment(s)."[16]

---

[14] *Consequent*, New Oxford American Dictionary (3d ed. 2010).

[15] 141 S.W.3d at 202–03. Employing one or two causal phrases in a contract lessens uncertainty in interpretation; employing phrases with settled legal meanings even more so.

[16] Emphases added.

7

The *Utica* reasoning does not stretch to encompass seven different gradations of causation, each with its own meaning. Among available standards, the ordinary meaning of "consequent upon" places it in the category of but-for causation.

Even if we assign "consequent" a meaning that requires substantial-factor causation, we would nevertheless conclude that standard to be met on these facts. Handing over the coins against the fraudulent check was not merely fertile ground upon which Dillon Gage's losses occurred. Rather, as a direct result of the fraudulent check, Dillon Gage forwarded the shipment tracking information to the thief, who in turn used it to reroute the packages. We recognize that an event can have more than one cause, even under proximate-causation standards.[17]

The Underwriters' interpretation of "consequent upon" is that the loss must "flow from" the fraudulent check. This definition comports with the ordinary understanding of "consequent upon" and definitions of "consequent."[18] Dillon Gage concedes that handing over the coins

---

[17] *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991).

[18] *E.g., Consequent*, Merriam-Webster Online (2021) ("following as a result or effect"); *Consequent*, American Heritage Dictionary (2020) ("Following as a natural effect, result, or conclusion"); *Consequent*, Oxford English Dictionary ("Following as an effect or result; resulting.") (2d ed. 1989); *Consequent*, Webster's Third New Int'l Dictionary ("following esp. as a result or effect: Resultant") (1961).

The policy contains indicia that it was drafted in British English, using British English spellings for *cheque*, *jewellery*, *utilise*, *colours*, *programme*, and *instalment*. Neither party argues that we must give "consequent upon" a distinct British English meaning, nor that British legal causation standards apply. In any event, the Cambridge Dictionary defines "consequent" in line

8

against the fraudulent check was at least a but-for cause of its loss. Accordingly, we answer yes to the Fifth Circuit's first certified question.

## III

Having settled the meaning of "consequent upon," we turn to the Fifth Circuit's second question. Texas concurrent-causation doctrine applies when covered and excluded events combine to cause an insured's loss.[19] Under that doctrine, if covered and uncovered events are inseparable, then causation is concurrent, the insurance policy's exclusion applies, and the insurer owes no coverage for the loss.[20] "But when a covered event and an excluded event 'each independently cause' the loss, 'separate and independent causation' exists, 'and the insurer must provide coverage despite the exclusion.'"[21]

Dillon Gage argues that the fraudulent check and UPS's alleged negligence in rerouting the shipments are independent causes of its losses. It observes that the check and the retrieval of the goods "involved different conduct, different actors, different time periods, and different locations." It does not dispute, however, that the same actor or actors

---

with the American English dictionaries we consulted: "happening as a result of something; resulting." *Consequent*, Cambridge Advanced Learner's Dictionary (4th ed. 2013). Additionally, the Queen's Bench has interpreted "consequent upon" in an insurance exclusion comparably to Texas common law concurrent-causation doctrine: "if the loss is caused by two causes effectively operating at the same time and one is wholly expressly excluded from the policy, the policy does not pay." *Wayne Tank & Pump Co. v. Employers Liability Assurance Corp.* [1974] 1 QB 57, 75 (Roskill LJ).

[19] *JAW The Pointe*, 460 S.W.3d at 608.

[20] *Id.*

[21] *Id.* (quoting *Utica*, 141 S.W.3d at 204).

9

used a fictitious Dillon Gage customer account and a forged check as part of the criminal scheme that achieved the theft. No evidence exists that Dillon Gage was the victim of two separate criminal schemes, perpetrated by different criminal actors. UPS rerouted the packages at the behest of the thief, but Dillon Gage supplied the coins to UPS and the tracking information to the thief against fraudulent checks.

Finally, Dillon Gage argues that UPS's errors "were independently capable of causing property losses without any fraudulent checks," but we must examine the events as they occurred, not as they might have occurred.[22] UPS did not permit the thief to reroute Dillon Gage's shipments in a vacuum. Instead, the thief induced UPS's alleged negligence by using shipping information Dillon Gage provided against the thief's tender of the fraudulent check.

\* \* \*

We hold that a loss sustained "consequent upon" an event connotes but-for causation under the policy's exclusion of coverage for property handed over to a third party against a fraudulent check. Accordingly, we answer the Fifth Circuit's first certified question yes.

We further hold that the third-party shipper's alleged negligence was a concurrent cause of the loss, dependent upon handing over the

---

[22] This is not to say that acts committed by the same actor are necessarily concurrent and excluded from coverage. *E.g., Guaranty Nat'l Ins. v. North River Ins.,* 909 F.2d 133, 137 (5th Cir. 1990) (holding that a hospital's failure to secure windows and to properly supervise a psychiatric patient each proximately caused her suicide and thus a professional exclusion did not apply). In this case, however, the claimed losses are the result of the excluded conduct.

10

property against the fraudulent checks. Accordingly, we answer the Fifth Circuit's second certified question no.

_____

Jane N. Bland
Justice

**OPINION DELIVERED:** December 3, 2021