# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 28, 2023

Lyle W. Cayce
Clerk

No. 18-11419
CONSOLIDATED WITH
No. 19-10948

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

EDDIE LAMONT LIPSCOMB,

*Defendant—Appellant*.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CR-357-1

Before SMITH, CLEMENT, and WILSON, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

This case arises from the unusually tortuous procedural history of Eddie Lipscomb's criminal sentencing after his conviction for federal crimes. The district court initially sentenced Lipscomb to a twenty-year term of imprisonment followed by a five-year term of supervised release ("SR"). Later, however, the court vacated that sentence and imposed ten years in prison and three years of SR.

No. 18-11419
c/w No. 19-10948

Lipscomb fully served that reduced prison term and began his SR. But because he violated the conditions of SR, the district court revoked it and imposed additional terms of imprisonment and SR. After serving a new prison term and beginning the new term of SR, Lipscomb again violated the conditions, so the court revoked SR a second time.

In the meantime, the government appealed Lipscomb's reduced sentence and prevailed. We vacated the reduced sentence and ordered the district court to reimpose his original, twenty-year sentence.

Lipscomb is currently serving that twenty-year term but appeals the two revocation judgments. Because the revocation judgments are part of Lipscomb's reduced sentence—a sentence we vacated—we now vacate the two revocation judgments, as well, and render judgment accordingly.

## I.

In 2008, Lipscomb pleaded guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He was sentenced to twenty years of imprisonment and five years of SR.

Because the district court concluded that Lipscomb's § 922(g) violation was a crime of violence and because Lipscomb had numerous robbery convictions and a burglary conviction, the court also determined that he was a "career offender" and enhanced his sentence accordingly under U.S.S.G. § 4B1.1. Lipscomb appealed the career-offender enhancement, and we affirmed.

Then things got complicated. In 2015, *Johnson v. United States* narrowed the definition of "violent felony" in the Armed Career Criminal Act (specifically, in § 924(e)) by enjoining enforcement of the residual

clause.  576 U.S. 591, 597 (2015). [1]

In response to *Johnson*, in 2016, Lipscomb moved under 28 U.S.C. § 2255 to vacate his sentence, positing that he was not an armed career criminal under § 924(e).  He reasoned that his prior robbery and burglary convictions did not meet the post-*Johnson* definition of "violent felony."  The district court agreed and vacated Lipscomb's sentence because it found that robbery is not a crime of violence in Texas.[2]  In 2018, it resentenced Lipscomb, without the § 924(e) enhancement, to ten years of imprisonment and three years of SR.

The resentencing created two parallel tracks in Lipscomb's case.  The first was litigation concerning the new sentence.  In 2018, the government appealed both the district court's order to vacate and the new sentence.  That appeal was eventually successful:  This court held that Lipscomb's prior robberies were violent felonies and that the district court had erred in not imposing the § 924(e) enhancement. *United States v. Lipscomb*, 982 F.3d 927, 928–30 (5th Cir. 2020).  We therefore ordered the district court to reinstate its original sentence. *Id.* at 931.

The Supreme Court granted certiorari, vacated the panel opinion, and remanded for reconsideration in light of its recent jurisprudence on the

---

[1] The Court held that the residual clause was unconstitutionally vague.  That clause (as relevant here) included in the definition of "violent felony" any felony involving the use or carrying of a gun "that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).  Since *Johnson*, then, the definition of "violent felony" includes only felonies involving the use of a gun that (i) have as an element the use (real, attempted, or threatened) of physical force against another; or (ii) are instances of burglary, arson, or extortion, or involve the use of explosives. *Id.* § 924(e)(2)(B)(i)–(ii).

[2] The court did not reach the question of whether burglary is a crime of violence in Texas because the ruling on the robbery claims was enough to make Lipscomb ineligible for enhancement under § 924(e).

definition of "violent felony" in § 924(e). *See Lipscomb v. United States*, 142 S. Ct. 59 (2021). On remand, the panel adhered to its judgment, vacated the district court's order granting Lipscomb's § 2255 motion, and remanded, ordering the district court to reinstate its original judgment. *United States v. Lipscomb*, No. 18-11168, 2022 WL 327472, at *2 (5th Cir. Feb. 3, 2022) (per curiam) (unpublished). The district court did so in July 2022.

Lipscomb sought certiorari from the second panel decision as well, but to no avail. *See Lipscomb v. United States*, 143 S. Ct. 1061(2023).

\* \* \*

We now jump to the second track, the one upon which the consolidated appeals are traveling. By the time the district court granted Lipscomb's § 2255 motion and resentenced him to ten years in prison in July 2018, Lipscomb had already been in prison for over ten years while serving his original twenty-year sentence. He therefore began his three-year term of SR essentially immediately, on July 10.

On October 31, 2018, however, the court revoked Lipscomb's SR because he had violated its conditions. The court then sentenced him to twelve months and one day of imprisonment followed by one year and 364 days of SR. When discussing the prison term, the court stated that it intended for Lipscomb to "serve th[e] full sentence . . . and that no Credit for the over[-]served time should be applied to reduce th[e] sentence." (Emphasis removed.) But the court did acknowledge that the Bureau of Prisons ("BOP"), not the court, was the ultimate authority to determine credit.

The court's intent did not prevail: Lipscomb got his credits and began SR on November 9, 2018. The court revoked SR yet again on August 23, 2019, and sentenced him to 702 days of imprisonment but no further SR. The court based the length of Lipscomb's prison term on his remaining 612 days of credit: The court wanted him to spend ninety days in jail, so it

No. 18-11419
c/w No. 19-10948

sentenced him to a total term of 702 days.

The court was clear that using up Lipscomb's credits was the sole basis for the decision, stating that it would be "dishonest" for the court to "pretend that [it was] doing it for some other reason." It also acknowledged Lipscomb's concern that using up credits through the term of SR could create a future problem for Lipscomb pending the resolution of his main appeal,[3] because credits used up by the term of SR could then be unavailable for his underlying sentence. In response, although the government suggested that an "equitable remedy" may be available in that situation, it was ultimately noncommittal.

Lipscomb then appealed both the first and the second revocation judgments.

*        *        *

Lipscomb's current status is as follows: He is serving the original and valid twenty-year sentence. His reduced sentence has been vacated, but the revocation judgments have not. According to information provided by the BOP, the time Lipscomb actually served on the revocation judgments is being credited against his twenty-year sentence. But the government has not stated that the current computation will remain in place, and it has acknowledged that the BOP could alter its view of the time Lipscomb served per the post-revocation penalties.

## II.

Lipscomb raises two issues on appeal. *First*, how the reinstatement of his original prison sentence affected the two revocation judgments. *Second*,

---

[3] And other related cases pending at the time, such as *United States v. Herrold*, 941 F.3d 173 (5th Cir. 2019) (en banc).

No. 18-11419
c/w No. 19-10948

whether the revocation judgments should be vacated because they were based on "misinformation of constitutional magnitude." The first contention relates to the legal status of the revocation judgments; the second is an attack on the merits of those judgments.

The government acknowledges that the revocation judgments are at least superseded by the reimposition of Lipscomb's original sentence. But in response to Lipscomb's contentions, it insists that the district court had the power to impose the judgments and did not err in imposing them.

Reduced to its essence, this appeal asks us to clarify the legal status of the revocation judgments. Before doing so, however, we must first assure ourselves of jurisdiction over the appeals and our power to vacate the judgments. The government suggests that we have no live case or controversy, given that Lipscomb's reimposed, twenty-year sentence superseded the revocation judgments, and the post-revocation penalties are being credited against his twenty-year sentence. In other words, his appeal is moot.

Lipscomb counters that the revocation judgments have ongoing legal effect because the BOP has not unequivocally disclaimed the possibility that it may alter its computation of his sentence and require him to serve both the twenty-year sentence and the terms imposed in the revocation judgments.

"Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *United States v. Sosebee*, 59 F.4th 151, 154 (5th Cir. 2023) (quoting *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987)). For us to have jurisdiction over an appeal, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990)). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S.

6

298, 307–08 (2012) (alteration in original) (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984)). A case therefore becomes moot "only when it is impossible for a court to grant '"any effectual relief whatever" to the prevailing party.'" *Id.* at 307 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

We are sympathetic to the government's position. In general, threatened injuries cannot be mere potentialities: They must at the least be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). It appears that all parties agree that the revocation judgments no longer have legal effect and that the BOP is currently giving Lipscomb credit for the time served under them.

Yet the authority upon which the government relies is distinguishable. The government adverts to *Preiser v. Newkirk*, which addressed a prisoner's transfer to a maximum-security prison. 422 U.S. 395, 398 (1975). The prisoner sought both a declaratory judgment that the transfer violated his rights and injunctions ordering (i) his transfer back to the original prison, (ii) the expungement of all records of the first transfer, and (iii) a prohibition on future transfers without a hearing. *Preiser* held that his case was moot because, before the district court made its ruling, he had been transferred back to his original (medium-security) prison. *Id.* at 398–99. Moreover, correction authorities had made a notation in his file that the transfer "should have no bearing in any future determinations" related to his parole or time allowances. *Id.* at 402.

Those factors are not present here. Lipscomb does not appeal an action by the agency that the agency subsequently undid, such as the prison transfer in *Preiser*. The instant dispute involves the interpretation and implementation by the BOP of a judgment by the district court. Nothing has been

No. 18-11419
c/w No. 19-10948

"undone," because the BOP has no authority to nullify the revocation judgments—only to incorporate them (or not) into Lipscomb's sentence computation per its own policies and standards.

There is also no clear statement or indication by the BOP that the *status quo* will invariably persist, *i.e.*, that the BOP will continue to view the revocation sentences as superseded and to credit Lipscomb's time served on them against his twenty-year sentence. Lipscomb's fear is therefore not completely "subjective" or entirely "remote and speculative." *Id.* at 403. Although the parties agree that the revocation judgments have been superseded, they nevertheless remain on the books, and the BOP has not foreclosed the possibility that its position regarding them will change.[4]

But even if Lipscomb's appeals were moot, we would still have authority to vacate the revocation judgments. A federal court is not forbidden from acting regarding a matter before it even after it has "determined

---

[4] For similar reasons, we find the case constitutionally ripe for our review. The ripeness requirement guarantees that "the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). The harm in this case is the extension of Lipscomb's sentence by incorporating his post-revocation penalties.

When determining whether a case is ripe for Article III purposes, "we consider both 'the fitness of the issues for judicial decision' and 'the hardship of withholding court consideration.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). Here, the relevant facts are retrospective in nature and relate to the purely legal question of the status of the revocation judgments. Delaying a resolution of the issue until either the BOP changes course or Lipscomb serves out his time under the *status quo* serves no purpose. *See DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) ("A case becomes ripe when it 'would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now.'" (quoting *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010)). Moreover, as discussed *supra*, Lipscomb's harm is not so remote or speculative that his claims are unfit for resolution now.

that the requirements of Article III no longer are (or indeed never were) met." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994). Accordingly, Congress has authorized courts to vacate "any judgment, decree, or order of a court lawfully brought before [them] for review." 28 U.S.C. § 2106. Because we dispose of Lipscomb's appeals without reaching the merits of the district court's decision, there is no jurisdictional bar.[5]

## III.

Turning to Lipscomb's arguments, we conclude that the revocation judgments should be vacated because his underlying sentence was vacated. We therefore do not reach Lipscomb's merits-based contention that the district court made an error of "constitutional magnitude."

Because much of the legal territory involved is unexplored, and because of some mutual confusion between the parties regarding the nature of their arguments, we briefly explain and clarify each side's contentions.

Lipscomb makes a creative and apparently novel argument that his revocation sentences should be vacated: A term of SR "commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e). Because Lipscomb is currently serving a twenty-year sentence, he has not been released from prison. As a result, contrary to appearances, his term of SR did not begin at the conclusion of his ten-year sentence. The original revocations are therefore nullities because they purported to revoke something that had not even started. Lipscomb also avers that the revocation judgments lack legal force because the reinstated sentence caused their "loss,"

---

[5] *Cf. U.S. Bancorp*, 513 U.S. at 21 ("If a judgment has become moot [while awaiting review], this Court may not consider its merits, but may make such disposition of the whole case as justice may require." (alteration in original) (quoting *Walling v. James V. Reuter, Co.*, 321 U.S. 671, 677 (1944))).

No. 18-11419
c/w No. 19-10948

*i.e.*, they are inconsistent with the reinstated sentence. At a minimum, Lipscomb asks the court to clarify that the revocation judgments were superseded by the vacatur of the reduced sentence.

The government appears to have interpreted the thrust of Lipscomb's contention differently, characterizing it as a retroactive attack on the district court's subject matter jurisdiction over the revocation judgments.[6] The government does not offer a direct argument against Lipscomb's theory that the revocation judgments should be vacated because the reinstitution of his original sentence has superseded them. The government also concedes that the revocation judgments currently have no legal effect.

Cutting through any imprecision, ambiguity, or lack of clarity, we understand the core of Lipscomb's contention to be that the vacatur of his reduced sentence rendered the revocation judgments void.[7]

We agree and hold that the vacatur of Lipscomb's reduced sentence requires the vacatur of the revocation judgments. Because his revocation judgments flow from—and indeed are part of—his underlying sentence,

---

[6] The confusion is understandable given some ambiguous statements in Lipscomb's brief. For example, he asserts, "The district court . . . had no power to revoke his term of [SR]," and he notes that "[t]his Court reviews whether a district court has jurisdiction to revoke [SR] de novo." But he maintains elsewhere that his argument is not jurisdictional: "There is no need to re-cast this substantive statutory argument in terms of 'subject matter jurisdiction' that 'comes and goes.'"

At this point, the parties—and we—agree that the district court had subject-matter jurisdiction over the litigation concerning the SR.

[7] We therefore pretermit discussion of Lipscomb's chronological sub-argument that he never started his term of SR given that his original sentence was reinstated. Instead, vacatur is appropriate because, as Lipscomb also contends, the government's "success" in getting the original sentence reinstated also resulted in "the loss of" the "two revocation judgments that are inconsistent with that reinstated sentence."

No. 18-11419
c/w No. 19-10948

vacatur of the latter entails vacatur of the former.[8]

In the absence of express guidance from any binding authority, we reach our result by considering both the statutory framework around SR and caselaw parsing revocation judgments.

First, the statutory context. When imposing a sentence of imprisonment, a court generally may also include SR after imprisonment. 18 U.S.C. § 3583(a). The term of SR is not, however, a separate sentence: It is "a part of the sentence" to the term of imprisonment. *Id.*

Courts also have broad discretion in imposing conditions of SR. *See id.* § 3583(d). When a defendant on SR violates those conditions and a court so finds by a preponderance of the evidence, the court may revoke the term of SR. *See id.* § 3583(e)(3). Upon revocation, the court can require the defendant to serve "in prison all or part of the term of [SR] authorized by statute" for the offense that resulted in the term of SR release "without credit for time previously served on postrelease supervision." *Id.* Revocation judgments therefore alter the terms of SR, which are themselves part of the underlying sentence.

Precedent similarly views post-revocation penalties as part of the

---

[8] Our judgment there would not be an instance of *Munsingwear* vacatur even if the case were moot, *contra* the parties' suggestions. When an appeal becomes moot through happenstance or the action of the party that prevailed in the court below, the reviewing court will sometimes vacate the judgment being appealed. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950); *U.S. Bancorp*, 513 U.S. at 23–25. Vacatur in such circumstances "clears the path for future relitigation of the issues" and prevents an unreviewable judgment from "spawning any legal consequences," such as claim preclusion. *Munsingwear*, 340 U.S. at 40–41.

Vacatur is appropriate in this case not because of the bare fact that the revocation judgments are now (*arguendo*) superseded or moot. Instead, it is appropriate given that vacatur of Lipscomb's reduced sentence perforce voided those judgments.

No. 18-11419
c/w No. 19-10948

underlying sentence.  The Supreme Court most clearly explained the relationship between a revocation judgment and its underlying sentence in *Johnson v. United States*, 529 U.S. 694, 698–99 (2000), which involved a constitutional *ex post facto* challenge after the 1994 addition of § 3583(h) to the SR statute.[9]

*Johnson* rejected the theory that a revocation judgment "imposes punishment for defendants' new offenses for violating the conditions of their [SR]."  *Id.* at 700 (quoting *United States v. Page*, 131 F.3d 1173, 1176 (6th Cir. 1997), *abrogated by Johnson*, 529 U.S. 694).  The rationale was that such a theory generated "serious constitutional questions." *Id.*[10]

To circumvent constitutional problems, *Johnson* held that "postrevocation penalties relate to the original offense."  *Id.* at 701.  Accordingly, courts must view "postrevocation sanctions as part of the penalty for the initial offense." *Id.* at 700.

The Court recently reaffirmed *Johnson*'s reasoning in *United States v. Haymond*, 139 S. Ct. 2369 (2019).  Although the Court failed to produce a majority opinion, Justice Gorsuch's plurality opinion and Justice Breyer's controlling concurrence[11] agreed that post-revocation penalties are part of

---

[9] That subsection expressly granted courts the authority to impose a new term of SR upon revocation of an earlier term of SR.  Before the amendment, some circuits had held that courts possessed that same authority under § 3583(e)(3).

[10] For example, double jeopardy.  If the conduct that violated a condition of SR was also criminal, and if post-revocation sanctions punished that offense independently from the underlying offense, then there could be two prosecutions for the same conduct:  The post-revocation hearing and the separate prosecution for that criminal conduct.  *See Johnson*, 529 U.S. at 700–01.

[11] Justice Breyer's concurrence is the holding of the Court under the *Marks* rule: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"

the underlying penalty.

Justice Breyer's concurrence noted that a revocation judgment "is typically understood as 'part of the penalty for the initial offense.'" *Id.* at 2386 (Breyer, J., concurring) (quoting *Johnson*, 529 U.S. at 700). Likewise, the plurality stated that SR "constitutes a part of the final sentence for [the defendant's] crime" regardless of whether it is later "revoked or sustained." *Id.* at 2380 (plurality opinion) (citing *Johnson*, 529 U.S. at 700). Thus, "when a defendant is penalized for violating the terms of his [SR], what the court is really doing is adjusting the defendant's sentence for his original crime." *Id.* at 2380 n.5.

The statutory framework and applicable precedent indicate that vacatur is warranted here. Lipscomb's revocation judgments were part of his ten-year sentence. That sentence was vacated. *See Lipscomb*, 2022 WL 327472, at *2. The revocation judgments are therefore legally void and should be vacated as well.

Lipscomb's revocation judgments are therefore VACATED in consideration of our earlier vacatur of his ten-year sentence. To avoid the unnecessary inconvenience of a remand, we hereby RENDER judgment accordingly.

---

*Garland v. Roy*, 615 F.3d 391, 399 (5th Cir. 2010) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). Because Justice Breyer "provided the 'narrowest grounds' . . . his concurrence represents 'the holding of the Court.'" *United States v. Garner*, 969 F.3d 550, 552 (5th Cir. 2020) (quoting *Marks*, 430 U.S. at 193), *as revised* (Aug. 14, 2020); *see also United States v. Badgett*, 957 F.3d 536, 540 (5th Cir. 2020) ("Because only three [Justices] joined Justice Gorsuch's plurality opinion, however, Justice Breyer's narrower concurrence controls." (citing *Marks*, 430 U.S. at 193)).