# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 12, 2021

Lyle W. Cayce
Clerk

No. 20-20194

DM Arbor Court, Limited,

*Plaintiff—Appellant*,

*versus*

The City of Houston,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1884

Before Davis, Southwick, and Costa, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

Hurricane Harvey inundated Houston with more than fifty inches of rain, damaging over 300,000 housing units in the city. *Post Harvey*, City of Hous. (2019), http://www.houstontx.gov/postharvey. More homes flooded in the Houston area during Harvey than in New Orleans during Hurricane Katrina. *Id.*

Some of those homes were in the Arbor Court Apartments, a low-income housing complex north of downtown Houston near Greens Bayou, which could not contain the water from Harvey. Arbor Court filed this

No. 20-20194

lawsuit challenging the City's refusal to grant permits to repair the damaged units.

The district court held that the suit was not ripe because Arbor Court had not yet obtained a decision from the final arbiter of Houston permit requests—the City Council. But since the filing of this appeal, the City Council has ruled and denied the permits. Arbor Court's attempt to revive this suit thus turns on the following question: Can a case ripen while on appeal?

I.

Under the City of Houston's Floodplain Ordinance, owners of property within certain flood-prone areas must obtain a permit from the City before making substantial repairs to their property. HOUS., TEX., CODE OF ORDINANCES ch. 19, art. II, § 19-16(a) (2009) (FLOODPLAIN ORDINANCE); *id.* art. I, § 19-2. The City may deny a permit if issuing it "could result in . . . [d]anger to life or property due to flooding . . . in the vicinity of the site." *Id.* art. II, § 19-19(1).

Following Harvey, Arbor Court sought permits from the City to repair its property, which is located in the floodplain and even, to some extent, in the floodway. Initially, the City placed a hold on the permits, finding that the apartments were too damaged to repair under FEMA Guidelines that prevent reconstruction that will exceed a certain percentage of the property's value. After negotiations over that issue, the City eventually removed the hold. But before the City had determined whether the permits should issue, Arbor Court filed this lawsuit, asserting regulatory takings claims—as well as other constitutional violations—against the City.

Shortly thereafter, the Houston Public Works Director denied Arbor Court's permit requests because of the high risk of flooding on the property. The denial letter noted the complex's history of floods and explained that its

No. 20-20194

"residents are in danger when Greens Bayou rises out of its banks," as it did during Harvey. The letter also informed Arbor Court that it could request a variance or appeal the permit denial to the General Appeals Board and, if necessary, the City Council. For over a year—454 days—Arbor Court did neither.

Arbor Court did, however, go on to file two additional complaints in district court, dropping its takings claims but alleging violations of due process, equal protection, the Contracts Clause, and state law. When Arbor Court sought leave to amend a third time to reassert takings claims, the court denied its motion and dismissed the case without prejudice because Arbor Court had failed to appeal the permit denial to the City. Following the ruling, Arbor Court at last appealed through the City's administrative process.

Meanwhile, the district court realized that it had issued its ruling prematurely, without allowing Arbor Court to reply to the City's response to its motion to amend. The court corrected this oversight and published an amended opinion that again dismissed the case for lack of subject matter jurisdiction, concluding that Arbor Court's claims were not ripe because the City was still considering its appeal.

A few months after the district court entered its final judgment, the City Council denied Arbor Court's permit requests, marking the end of the permit appeal process.

## II.

At the time the district court ruled, Arbor Court's claims were not ripe. Ripeness ensures that federal courts do not decide disputes that are "premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)). A case becomes ripe when it "would not benefit from any further factual development and when the court would be in no better position to

adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (cleaned up). The ripeness inquiry reflects "'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).[1]

A regulatory takings claim is not ripe until the government has reached a final decision on the challenged regulation. *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019).[2] Only after the final regulatory decision will a court have before it the facts necessary to evaluate a regulatory takings claim, such as "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations." *Id.* at 191. When similar "factual development is necessary" for related claims—like the due process, equal protection, and Contracts Clause claims Arbor Court alleges—then

---

[1] Constitutional ripeness refers to Article III's case-or-controversy requirement, which mandates that an "actual controversy" exist between the parties "at all stages of review" in federal court. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (cleaned up). Even when constitutional ripeness is satisfied, however, a court may decide not to hear a case for prudential reasons, such as "[p]roblems of prematurity and abstractness." *Buckley*, 424 U.S. at 114 (quoting *Socialist Lab. Party v. Gilligan*, 406 U.S. 583, 588 (1972)).

[2] *Knick* overruled *Williamson County*'s requirement that a property owner first litigate a takings claim in state court. 139 S. Ct. at 2167-68. But it did not alter the requirement for a final decision from the regulator before any litigation is commenced. *Id.* at 2169 ("[T]he developer [in *Williamson County*] still had an opportunity to seek a variance from the appeals board, so any taking was therefore not yet final. . . . Knick does not question the validity of this finality requirement, which is not at issue here."); *see also Campbell v. United States*, 932 F.3d 1331, 1340 n.5 (Fed. Cir. 2019) (noting that the finality requirement "of *Williamson* remains good law under *Knick*").

those claims are also not ripe until the regulator has made a final decision. *John Corp. v. City of Houston*, 214 F.3d 573, 586 (5th Cir. 2000).

For City of Houston development permits, the City Council has the final say. Floodplain Ordinance art. II, § 19-23(g). When this matter was pending in district court, the Council had not yet reached a decision about Arbor Court's permits. Because the City had not taken a "final, definitive position" about the permits, the asserted claims were not ripe. *Williamson Cnty.*, 473 U.S. at 191; *see Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1041–42 (5th Cir. 1998) (affirming dismissal of takings claim because plaintiff did not "follow through with any formal process of appeal" with the city). So the district court got it right—this dispute was not ripe when it entered judgment dismissing the case, and it would have been futile for Arbor Court to amend its complaint to add an additional unripe claim.

Ordinarily our conclusion that the district court ruled correctly would be the end of the matter. An affirmance would follow. But an idiosyncratic feature of ripeness law requires a different result.

As "ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974); *see Anderson v. Green*, 513 U.S. 557, 559 (1995); *Buckley v. Valeo*, 424 U.S. 1, 113–14 (1976). We have repeatedly applied this principle that "[i]n weighing a ripeness claim, an appellate court may properly consider events occurring after the trial court's decision." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 n.2 (5th Cir. 1987); *see Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 926 (5th Cir. 2017); *Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 313–14 (5th Cir. 2010) (per curiam); *see also* 13B Charles Alan Wright et al., Federal Practice and Procedure § 3532.7 (3d ed. 2020) ("Ripeness should

be decided based on the basis of all the information available to the court. Intervening events that occur after decision in lower courts should be included, just as must be done with questions of mootness.").

Allowing a case to ripen on appeal is in seeming tension with the venerable rule that "the jurisdiction of the [c]ourt depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824); *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004) (describing the "time-of-filing rule" as "hornbook law"). It is hard to see how jurisdiction can come into existence during the appeal. A case ripening based on post-trial-court developments thus makes more sense when the ripeness problem is rooted in prudential, rather than constitutional, concerns. *Progressive Mountain Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 736 (11th Cir. 2020) (per curiam) ("It may be that the only way a case can legitimately 'ripen' after a district court judgment is if ripeness involves prudential considerations and is not a purely constitutional doctrine."). When the problem is only one of prudential ripeness, the court always had jurisdiction; prudence just compelled the court to not yet exercise it. *See Socialist Lab. Party v. Gilligan*, 406 U.S. 583, 588 (1972) ("Problems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present." (quoting *Rescue Army v. Municipal Court*, 331 U.S. 549, 574)); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 88–89 (5th Cir. 2011) (noting that prudential ripeness concerns do not defeat a court's jurisdiction).

It is not surprising, then, that the Supreme Court articulated the rule that a case may ripen on appeal in a prudential ripeness case. *Regional Rail Reorganization*, 419 U.S. at 146–47; *see Catholic Soc. Servs., Inc.*, 509 U.S. at 57 n.18 (categorizing *Regional Rail Reorganization Act Cases* as involving prudential ripeness). And we can rest easier in applying that rule here

because the final decisionmaker requirement for takings claims is motivated by prudential concerns about the fitness of the issue for judicial review. *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 734 (1997) (describing *Williamson County*'s finality requirement as "prudential"); *Rosedale*, 641 F.3d at 88–89 & n.2 (noting that "the Supreme Court has . . . explicitly held that *Williamson County*'s ripeness requirements are merely prudential, not jurisdictional").

But perhaps we have discretion, rather than a duty, to consider whether a case has become ripe based on events occurring after the trial court rules. The City argues our authority is discretionary, and that we should not choose to revive these claims because the lack of ripeness in the trial court was solely the result of Arbor Court's delay in appealing the permit denials. To remand the claims because the City Council has now denied the permits would, in the City's view, "reward" Arbor Court for its dilatory conduct.

Although some of the ripeness-on-appeal caselaw is couched in the language of discretion, *see New Orleans Pub. Serv.*, 833 F.2d at 586 n.2, our best reading of the decisions—especially those from the Supreme Court—is that "[i]ntervening events that occur after decision in lower courts should be included" when an appellate court assesses ripeness. 13B WRIGHT, *supra*, § 3532.7; *Regional Rail Reorganization*, 419 U.S. at 140. Supporting this view is the City's inability to cite any case in which an appellate court declined to find a dispute ripe when postjudgment events had made it so. And we have an obligation to exercise the jurisdiction Article III and Congress grant us when any impediments, such as prudential concerns, have been eliminated. *Cf. Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976) (recognizing that abstention "is an extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). Everyone agrees that the

impediment that existed in the district court—the lack of a final decision from the City Council—is now absent.  As a result, this case has become ripe and should be remanded for consideration of the merits.  *Regional Rail Reorganization*, 419 U.S. at 140 n.25.

The remand should not be viewed as a "reward" to Arbor Court.  As is proper when a dispute is not ripe, the district court dismissed the case without prejudice.  A without-prejudice dismissal allows the filing of a new lawsuit once the case ripens.  In fact, Arbor Court did just that after the City Council denied the permit; there is now a second suit in district court (though it was stayed pending the outcome of this appeal).  We have trouble seeing the practical difference between Arbor Court's pursuing the merits of its claims on remand in this case as opposed to going forward in the recently filed case.  Either way, Arbor Court will be able to litigate its claims.  The City is understandably frustrated that it had to devote resources to litigating ripeness because Arbor Court filed this suit prematurely.  But Arbor Court's premature filing of its claims does not appear to have benefitted it in any way; pursuit of this appeal rather than just proceeding in the newly filed suit has only delayed resolution of the merits.  In any event, the consequence of filing an unripe claim is never a permanent bar on pursuing the claim.  The claim can always be brought once it ripens, whether that is done via a remand in the original case or in a new lawsuit.  Arbor Court seeks the former path, and the law requires that we remand this now-ripe case.

* * *

The district court correctly concluded that this case was not ripe because the City Council had not yet denied the permits.  That warranted dismissal of the pending claims and the denial of Arbor Court's attempt to add yet another unripe claim.  But now that the Council has acted, the claims

8

are ripe.  This leads to the peculiar result of sending a case back to the district court even though it got everything right.

We VACATE the judgment dismissing this case and REMAND for further proceedings.  We also VACATE the denial of Arbor Court's motion for leave to file a third amended complaint as it was based, at least in part, on the futility of that amendment while the takings claim was not ripe.  We express no opinion on whether leave should be granted under the current posture of this case.