# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 23, 2021

Lyle W. Cayce
Clerk

No. 19-60632

Roy Harness; Kamal Karriem,

*Plaintiffs—Appellants*,

*versus*

Delbert Hosemann, *Secretary of State of Mississippi*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:17-CV-791

Before Smith, Higginson, and Engelhardt, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Roy Harness and Kamal Karriem lost the right to vote in Mississippi when they were convicted of crimes enumerated in § 241 of the Mississippi Constitution. They claim that list was enacted with racially discriminatory intent in violation of the Fourteenth Amendment. But they are not the first to make that claim—over twenty years ago, we held that amendments to § 241 cured it of its discriminatory taint. Under the rule of orderliness, we are bound by that decision, so we affirm the summary judgment dismissing their claim.

No. 19-60632

I.

From the Civil War until 1890, Mississippi denied the franchise to those convicted of any crime punishable by imprisonment in the state penitentiary.[1] But in 1890, Mississippi replaced its generic description of disenfranchising crimes with a list of specific disenfranchising crimes: "bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy." MISS. CONST. art. XII, § 241 (1890). Its reason for doing so was discriminatory. The state made no secret of its motive: "Restrained by the federal constitution from discriminating against the negro race, the [1890 Mississippi constitutional] convention discriminated against its characteristics and the offenses to which its weaker members were prone." *Ratliff v. Beale*, 20 So. 865, 868 (Miss. 1896). The convention believed that blacks were "given rather to furtive offenses than to the robust crimes of the whites," so "[b]urglary, theft, arson, and obtaining money under false pretenses were declared to be disqualifications, while robbery and murder and other crimes in which violence was the principal ingredient were not." *Id.*

Mississippi amended § 241 in 1950, removing burglary from the list, and again in 1968, adding murder and rape. 1950 Miss. Laws 959–60; 1968 Miss. Laws 1074–75. In both instances, § 241 was amended on two-thirds of both legislative houses' agreeing on the newly worded section, and then approval of the new section by a simple majority of the whole electorate.

---

[1] *See* THE REVISED CODE OF THE STATUTE LAWS OF THE STATE OF MISSISSIPPI 86, 618 (1871) (disenfranchising, through ch. 5, art. II, § 343, anyone convicted of "infamous crimes," defined in ch. 59, art. XIII, § 2855, as "offences punished with death, or confinement in the penitentiary"); THE REVISED CODE OF THE STATUTE LAWS OF THE STATE OF MISSISSIPPI 75, 796 (1880) (disenfranchising, through ch. 4, § 108, anyone convicted of "any felony," defined in ch. 78, § 3104 as "offences punished with death, or confinement in the penitentiary").

No. 19-60632

Harness and Karriem are black citizens of Mississippi who have lost their right to vote because they have been convicted of crimes enumerated in § 241. They sued Mississippi's Secretary of State, contending that § 241 violates the Fourteenth Amendment because it was enacted with a discriminatory purpose. The district court entered summary judgment for the Secretary of State, reasoning that, per *Cotton v. Fordice*, 157 F.3d 388 (5th Cir. 1998), the discriminatory taint of the 1890 provision was removed by the amendment processes in 1950 and 1968.

## II.

Before discussing the merits, "we must assure ourselves of our jurisdiction." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007). The Secretary of State contends we lack jurisdiction on the basis of both standing and sovereign immunity.

## A.

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). The Secretary of State acknowledges the plaintiffs' injury in fact, averring instead that their injury is traceable not to him but to the county officials responsible for maintaining voter rolls.

But that is not so. In Mississippi, "the 'Statewide Elections Management System' . . . constitute[s] the official record of registered voters in every county of the state." MISS. CODE ANN. § 23-15-165(1). "The Office of the Secretary of State . . . develop[s] and implement[s] the Statewide Elections Management System so that the registrar and election commissioners of each county shall . . . [r]eceive regular reports of . . . convictions for disen-

franchising crimes that apply to voters registered in the county." *Id.* § 23-15-165(2)(c). Thus, under Mississippi law, the office of the Secretary of State "ha[s] a role in" removing convicted felons from the voter rolls "and is in a position to redress it at least in part."[2]

## B.

For a similar reason, the Secretary of State's objection that the suit is barred by sovereign immunity cannot be sustained. "Suits for injunctive or declaratory relief are allowed against a state official acting in violation of federal law if there is a sufficient connection to enforcing an allegedly unconstitutional law." *Tex. Democratic Party*, 978 F.3d at 179 (quotation omitted). We have "not spoken with conviction about all relevant details of the 'connection' requirement," but if there is a "a 'special relationship' between the state actor and the challenged statute," there is certainly a sufficient connection. *Id.* That is the case here. The Secretary of State is charged by state law with "develop[ing] and implement[ing] the Statewide Elections Management System," which serves as the "official record of registered voters in every county of the state." Miss. Code Ann. § 23-15-165(2), (1). County-level officials may also exercise control over voter rolls, but that does not reduce the Secretary of State's connection to the enforcement of § 241.

## III.

States are permitted to disenfranchise felons. U.S. Const. amend XIV, § 2; *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). But the Constitution forbids such provisions where their "original enactment was motivated by a desire to discriminate against blacks on account of race and the [provision]

---

[2] *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020) (opining on Texas's election law), *cert. denied*, 2021 WL 78479 (U.S. Jan. 11, 2021) (No. 19–1389).

continues to this day to have that effect."[3]  The plaintiffs contend that the portions of § 241 traceable to its original enactment in 1890[4] are unconstitutional because they were enacted with that precise unconstitutional motive.

We do not write on a blank slate.  In *Cotton*, 157 F.3d at 391, we held that amendments to § 241 in 1950 and 1968 "superseded the [1890] provision and removed the discriminatory taint associated with the original version." We recognized that "§ 241 was enacted in an era when southern states discriminated against blacks by disenfranchising convicts for crimes that, it was thought, were committed primarily by blacks" and that Mississippi selected the crimes listed in § 241 for that reason.  *Id.*  On the other hand,

> Section 241, as enacted in 1890, was amended in 1950, removing "burglary" from the list of disenfranchising crimes. Then, in 1968, the state broadened the provision by adding "murder" and "rape"—crimes historically excluded from the list because they were not considered "black" crimes.  Amending § 241 was a deliberative process.  Both houses of the state legislature had to approve the amendment by a two-thirds vote. The Mississippi Secretary of State was then required to publish a full-text version of § 241, as revised, at least two weeks before the popular election.  Finally, a majority of the voters had to approve the entire provision, including the revision.  Because Mississippi's procedure resulted both in 1950 and in 1968 in a re-enactment of § 241, each amendment superseded the previous provision and removed the discriminatory taint associated

---

[3] *Hunter v. Underwood*, 471 U.S. 222, 233 (1985); *see also United States v. Fordice*, 505 U.S. 717, 728 (1992) (requiring states to "eradicate[] policies and practices traceable to" their prior racially-motivated actions); *Ramos v. Louisiana*, 140 S. Ct. 1390, 1410 (2020) (Sotomayor, J., concurring) (noting that a statute's legacy of racial animus may persist so long as the "States' legislatures never truly grappled with the laws' sordid history in re-enacting them").

[4] That is, the crimes enumerated in § 241 besides rape and murder, which were added in 1968.

No. 19-60632

with the original version.

*Id.* (footnote and citations omitted). In other words, as stated in *Cotton*, "by amendment, a facially neutral provision like § 241 might overcome its odious origin," and § 241 did. *Id.*

The plaintiffs offer three reasons we are not bound by *Cotton*, but none works. First, the plaintiffs suggest that evidence of the actual ballots with which voters approved the 1950 and 1968 amendments, and introduced for the first time in this case demonstrate that voters did not have "the option of re-enacting or repealing the remainder of the original list of disqualifying crimes. Instead, their only options were to vote 'For Amendment' or 'Against Amendment.'" But *Cotton* relied not on the particular options with which voters were presented but, instead, on the "deliberative process" used to amend § 241. *Cotton*, 157 F.3d at 391.[5]

Second, the plaintiffs maintain that because of the racial composition of the Mississippi legislatures and general resistance to desegregation in Mississippi at the times of the amendments, they "could not plausibly be considered steps taken to 'remove[] the discriminatory taint associated with the original [1890] version.'" (quoting *Cotton*, 157 F.3d at 391). *Cotton* did leave

---

[5] Recently, *Cotton*'s reasoning was described as relying on the deliberative process:

> Both [the 1950 and 1968] amendments involved, first, *a deliberative process* that required two-thirds votes of both houses of the state legislature and, second, assent of the majority of Mississippi voters to 'the entire provision, including the revision.' *Cotton*, 157 F.3d at 391–92. *In light of that process*, we explained that section 241 in its then-present form could be considered unconstitutional only if the amendments were themselves adopted with discriminatory purpose.

*Veasey v. Abbott*, 888 F.3d 792, 821 (5th Cir. 2018) (Graves, J., concurring in part and dissenting in part) (emphasis added).

open the possibility that § 241 would be unconstitutional "if the amendments were adopted out of a desire to discriminate against blacks." *Id.* at 392. But the plaintiffs don't offer any evidence that that was so besides general Mississippi history fully available to the *Cotton* court. And, despite that history, the *Cotton* panel was convinced that the 1968 amendment adding crimes that were excluded in 1890 because "they were not considered 'black' crimes" was sufficient to cure the discriminatory taint of the entire provision. *Id.* at 391.

Finally, the plaintiffs posit that *Cotton* was abrogated by *Abbott v. Perez*, 138 S. Ct. 2305 (2018), at least as to the parts of § 241 traceable to 1890. *Perez* described *Hunter* as rejecting the theory that, after certain discriminatory disenfranchising offenses were removed from Alabama's constitution, "the parts that remained," were cured of their taint, "because the amendments did not alter the intent with which the article, including the parts that remained, had been adopted." *Id.* at 2325. But *Cotton* had already distinguished the process of constitutional change at issue in *Hunter*—courts' declaring certain aspects of the provision unconstitutional—from the deliberative legislative amendments at issue here. *Cotton*, 157 F.3d at 391 n.8. *Perez*'s phrase "the parts that remained" refers to the parts of the Alabama constitution that were still enforceable following judicial decisions, not to the parts of a provision that are historically traceable to an earlier enactment.

Under the rule of orderliness, "an intervening change in the law must be unequivocal, not a mere 'hint' of how the Court might rule in the future." *United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir. 2017) (quoting *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013)). The statement in *Perez* is not enough.

AFFIRMED.