# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2025

Lyle W. Cayce
Clerk

No. 20-11216

Brian Keith Umphress,

*Plaintiff—Appellant*,

*versus*

David C. Hall, *in his official capacity as Chair of the State Commission on Judicial Conduct*; Janis Holt, *in her official capacity as Secretary of the State Commission on Judicial Conduct*; David M. Patronella, Darrick L. McGill, Sujeeth B. Draksharam, Ronald Bunch, Valerie Ertz, Frederick C. Tate, M. Patrick Maguire, David Schenck, Steve Fischer, and Clifton Roberson, *in their official capacities as Members of the State Commission on Judicial Conduct*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-253

Before Smith, Richman, and Graves, *Circuit Judges*.

Per Curiam:

Canon 4A(1) of the Texas Code of Judicial Conduct requires Texas state judges to conduct their extra-judicial activities in a manner that does not call into question their impartiality. The State Commission on Judicial Con-

No. 20-11216

duct, through issuance of a now-rescinded warning, applied that provision to Dianne Hensley, a justice of the peace, for publicly refusing, for religious reasons, to perform same-sex weddings while continuing to perform opposite-sex weddings. Hensley sued the Commission in state court, where her case is still pending.

Meanwhile, Brian Umphress, a county judge who—like Hensley—declines to perform same-sex marriages on religious grounds, is challenging, in federal court, the Commission's application of Canon 4A(1). He contends that applying the Canon to a judge's refusal to officiate at same-sex weddings is unconstitutional. His contention, however, raises a threshold issue of state law for which there is no controlling precedent: As a matter of Texas law, do judges violate Canon 4A(1) by publicly refusing to perform same-sex weddings on moral or religious grounds while continuing to officiate at opposite-sex weddings?

The district court dismissed for want of subject matter jurisdiction, holding that Umphress lacked standing and that his claims were not ripe. The court also observed that even if it had jurisdiction, it would have abstained under the *Pullman*[1] doctrine.

Because Umphress has standing, and his claims are ripe, we reverse the dismissal based on lack of subject matter jurisdiction. Moreover, because state-court litigation appears unlikely to yield an answer to the crucial threshold question of Texas law, we decline to abstain under *Pullman*, but, instead, certify that question to the Supreme Court of Texas:

---

[1] *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

2

No. 20-11216

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, UNDER ART. 5, §3-C OF THE TEXAS CONSTITUTION AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE.**

**TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:**

I.

In 2017, the *Waco Tribune-Herald* published an article reporting that Hensley "would only [perform] a wedding between a man and a woman." After a Commission staff member reviewed that article, the Commission initiated an investigation into Hensley's conduct. The Commission determined that Hensley "should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(1)."

Hensley sued the Commission in state court, seeking (1) relief declaring that judges do not violate Canon 4A(1) by "expressing disapproval of homosexual behavior or same-sex marriage" or by "belonging to or supporting a church or charitable organization that opposes homosexual behavior or same-sex marriage" and (2) relief enjoining the Commission "from investigating or sanctioning judges . . . who recuse themselves from officiating at same-sex weddings on account of their sincere religious beliefs."

Several months later, Umphress sued the Commission in federal court. Like Hensley, Umphress refuses to perform same-sex weddings for religious reasons. He belongs to and supports a church "that adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture." Further, Umphress planned to seek reelection in 2022

3

and, as part of his campaign, publicly opposed same-sex marriage and the result in *Obergefell v. Hodges*, 576 U.S. 644 (2015).

Asserting that "[e]ach of these activities is exposing him to discipline from the . . . Commission," Umphress brings five claims for declaratory and injunctive relief. Umphress avers (1) that neither *Obergefell* nor the Constitution requires officiants to perform same-sex weddings; (2) that the Commission's interpretation and application of the Canon (a) violates the First Amendment, (b) is unconstitutionally vague, and (c) violates the Free Exercise Clause; and (3) that *Obergefell* was wrongly decided.

The Commission moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss for want of subject matter jurisdiction and sought abstention under *Pullman*. The district court granted the motion to dismiss, holding that Umphress lacked standing and that his claims were unripe. The court concluded in the alternative that "[e]ven if . . . Umphress had standing and his claims were ripe, [it] would abstain under *Pullman*." Nonetheless, because it dismissed for lack of subject matter jurisdiction, the court denied the motion to abstain as moot. Umphress timely appealed.

While Umphress's appeal was pending in our court, Hensley's lawsuit continued to move through the state court system. Shortly before we heard oral argument in this case, the state trial court dismissed Hensley's suit on a number of procedural grounds, including her purported failure to comply with statutory remedies and notice requirements, immunity, ripeness, res judicata, and collateral estoppel. Hensley appealed that ruling to the Third Court of Appeals, which affirmed.[2] The Supreme Court of Texas reversed and remanded for consideration on the merits. *Hensley v.*

---

[2] *See Hensley v. State Comm'n on Jud. Conduct*, No. 03-21-00305-CV, 2022 WL 16640801, at *7 (Tex. App.—Austin Nov. 3, 2022, pet. filed) (mem. op.).

No. 20-11216

*State Comm'n on Jud. Conduct*, 692 S.W.3d 184 (Tex. 2024). The Commission then rescinded its warning against Hensley and maintained, in the Third Court of Appeals, that Hensley's case is now moot. That suit remains pending. *See Hensley v. State Comm'n on Jud. Conduct*, No. 03-21-00305-CV (Tex. App.—Austin).

## II.

We review *de novo* the dismissal for lack of subject matter jurisdiction. *Laufer v. Mann Hosp.*, 996 F.3d 269, 271 (5th Cir. 2021). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction"—here, Umphress.[3] In reviewing the dismissal, we "must accept . . . as true" the complaint's factual allegations, and we "may consider '(1) the complaint alone, (2) the complaint supported by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"[4] We dismiss for want of jurisdiction only if "it appears certain that [Umphress] cannot prove a plausible set of facts that establish subject matter jurisdiction."[5] Here, subject matter jurisdiction is challenged on three grounds: standing, ripeness, and, while pending on appeal, mootness.

## A.

First, we respectfully disagree with the district court's holding that Umphress lacks standing.

---

[3] *Id.* (internal quotation marks omitted) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[4] *Carroll v. Abide*, 788 F.3d 502, 504 (5th Cir. 2015) (quoting *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)).

[5] *Id.* (internal quotation marks omitted) (quoting *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013)).

No. 20-11216

For standing, Article III of the Constitution requires a plaintiff to "demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."[6] Each of those elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation."[7] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."[8] As always, "standing is assessed 'at the time the action commences' [and] 'must continue throughout its existence.'"[9]

### 1.

The dispute centers on the injury-in-fact element of standing. Umphress challenges the Commission's potential future enforcement of Canon 4A(1) against him. But because the Commission has not taken any disciplinary action against Umphress, his claimed injury raises questions of imminence.

"Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes."[10] Alleged future injur-

---

[6] *Harness v. Hosemann*, 988 F.3d 818, 821 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)).

[7] *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018), as revised (Feb. 1, 2018)).

[8] *Id.* at 658 n.16 (internal quotation marks omitted) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992)).

[9] *Carney v. Adams*, 592 U.S. 53, 60 (2020) (first quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); and then *id.* at 189 ).

[10] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks

No. 20-11216

ies are generally imminent—and thus confer standing—when they are "'certainly impending' or there is a 'substantial risk that the harm will occur.'"[11]

A specific standard governs whether the threatened enforcement of a law is sufficiently imminent to constitute an injury in fact:

> When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. Instead, . . . a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."[12]

We have applied the Court's pre-enforcement standing inquiry as a three-part test, holding that "[a] plaintiff has suffered an injury in fact if he (1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question]' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'"[13]

The third prong of the injury-in-fact analysis involves a critical distinction between facial and as-applied challenges:

> Whereas "[t]here must be some evidence that [a] rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge," that is not the case for facial challenges.

---

omitted) (quoting *Lujan*, 504 U.S. at 565 n.2).

[11] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Amnesty*, 568 U.S. at 414 n.5).

[12] *Id.* at 158–59 (internal citations omitted) (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

[13] *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (second alteration in original) (quoting *Susan B. Anthony List*, 573 U.S. at 161–64)).

No. 20-11216

Instead, "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."[14]

Umphress has alleged an imminent injury in fact.

a.

First, Umphress has shown "an intention to engage in a course of conduct arguably affected with a constitutional interest."[15] He asserts that he "is a member and supporter of . . . a Bible-believing church that adheres to longstanding Christian teaching that marriage exists only between one man and one woman, and that homosexual conduct of any sort is immoral and contrary to Holy Scripture"; that he "refuses to officiate at same-sex weddings, even though he continues to officiate at opposite-sex wedding ceremonies," in order to "express his disagreement with same-sex marriage and *Obergefell*"; and that he "intends to campaign for office as an opponent of same-sex marriage and the living-constitution mindset that produced *Obergefell*." Those actions are forms of expression, expressive conduct, and religious exercise that implicate First Amendment interests.[16]

---

[14] *Id.* at 335 (internal citations omitted) (first quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019), and then quoting *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)).

[15] *Id.* at 330 (internal quotation marks omitted) (quoting *Susan B. Anthony List*, 573 U.S. at 161).

[16] *See Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 631 (2018) ("[T]he religious and philosophical objections to gay marriage are protected views and in some instances protected forms of expression."); *Obergefell*, 576 U.S. at 679–80 ([R]eligions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to

No. 20-11216

b.

Second, Umphress has shown that his intended future conduct is "arguably proscribed by" Canon 4A(1).[17]  As Umphress notes, the Commission issued a public warning against Hensley for engaging in analogous behavior.  Umphress refuses on religious grounds to officiate same-sex weddings while continuing to officiate opposite-sex weddings, and he plans to broadcast his opposition to same-sex marriage.  Because his actions are substantially similar to those for which Hensley was warned, it is at least arguable that Canon 4A(1) proscribes Umphress's conduct.[18]

c.

Third, Umphress has shown that "the threat of [Canon 4A(1)'s] future enforcement is substantial."[19]  A plaintiff's burden regarding the substantial threat of enforcement depends on the nature of his constitutional challenge:  In as-applied challenges, "[t]here must be some evidence that [a] rule would be applied to the plaintiff," whereas in facial challenges, "courts will assume a credible threat of prosecution in the absence of compelling con-

---

their lives and faiths . . . "); *Roman Cath. Diocese v. Cuomo*, 592 U.S. 14, 16 (2020) (per curiam) (holding that litigants' claims that restrictions on attendance at religious services violated the Free Exercise Clause were likely to succeed on the merits); *Republican Party v. White*, 536 U.S. 765, 788 (2002) (holding that "[t]he Minnesota Supreme Court's canon of judicial conduct prohibiting candidates for judicial election from announcing their views on disputed legal and political issues violates the First Amendment").

[17] *Speech First*, 979 F.3d at 330 (internal quotation marks omitted) (quoting *Susan B. Anthony List*, 573 U.S. at 162).

[18] *See id.* at 332 n.10 (observing that "the question is simply whether the speech is '*arguably* . . . proscribed by' the challenged policies," not "whether the policy actually prohibits the speech in question" (emphasis added) (quoting *Susan B. Anthony List*, 573 U.S. at 162)).

[19] *Id.* at 330 (internal quotation marks omitted) (quoting *Susan B. Anthony List*, 573 U.S. at 164).

trary evidence."[20]  Because of that dichotomy, the parties dispute the nature of Umphress's constitutional challenge.

Umphress challenges Canon 4A(1) as applied.

"[T]o categorize a challenge as facial or as-applied we look to see whether the claim and the relief that would follow reach beyond the particular circumstances of the plaintiffs regardless of how the challenge is labeled by the plaintiff."[21]  Umphress seeks a remedy confined to his particular factual circumstances.  He seeks to declare it unconstitutional as applied to—and enjoin its enforcement against—judges who conduct "their extra-judicial activities in a manner that evinces disapproval of same-sex marriage and homosexual conduct."  He does not seek to invalidate the Canon in all its applications.

The same is true of Umphress's void-for-vagueness claim.  He requests "a declaratory judgment that Canon 4A(1), as currently interpreted by the Commission, is unconstitutionally vague" and seeks to enjoin the Commission's enforcement "in any situation until the Commissioners announce a clarifying interpretation that explains when conduct that evinces disapproval of a person's sexual behavior violates the . . . impartiality requirement."  Umphress asserts that the Commission's specific interpretation of Canon 4A(1)—under which "judges may be subject to professional discipline if they conduct their extra-judicial activities in a manner that evinces disapproval of same-sex marriage and homosexual conduct"—creates a vagueness problem.  He does not contend that Canon 4A(1), as

---

[20] *Id.* at 335 (internal quotation marks omitted) (first quoting *Speech First, Inc. v. Schlissel*, 939 F.3d at 766; and then quoting *N.H. Right to Life PAC*, 99 F.3d at 15).

[21] *Cath. Leadership Coal. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (cleaned up) (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)).

written, is vague in all, or even most, applications. In other words, Umphress alleges that the Canon is vague as applied. *See Cath. Leadership Coal.*, 764 F.3d at 426.

Because Umphress brings an as-applied challenge, he must show some evidence that there is a substantial threat that the Commission would enforce Canon 4A(1) against him. He has made that showing.

Chiefly, Umphress "has alleged an intent to engage in the same speech [and expressive conduct] that was the subject of a prior enforcement proceeding."[22] The Commission issued Hensley a warning referencing her refusal to perform same-sex weddings while continuing to perform opposite-sex weddings, as well as her public comments concerning her refusal. Like Hensley, Umphress officiates opposite-sex weddings but refuses to officiate at same-sex weddings, and he intends publicly to declare his disapproval of same-sex marriage. Accordingly, though the Hensley warning—like any disciplinary proceeding—was undoubtedly context-specific, the core conduct for which Hensley was disciplined is substantially similar to Umphress's actions.

We acknowledge that there is no "history of past enforcement" against Umphress specifically.[23] Moreover, enforcement of Canon 4A(1) in the context of opposition to same-sex marriage is a relatively "rare occurrence."[24] Nonetheless, prospective factors bolster the likelihood that

---

[22] *Susan B. Anthony List*, 573 U.S. at 166; *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been 'chimerical.'" (quoting *Poe v. Ullman*, 267 U.S. 497, 508 (1961))).

[23] *Susan B. Anthony List*, 573 U.S. at 164, 166–67.

[24] *Id.* at 164–65 ("Petitioners inform us that the Commission handles about 20 to 80 false statement complaints per year, and respondents do not deny that the Commission frequently fields complaints alleging violations of the false statement statute." (internal

No. 20-11216

the Commission will enforce Canon 4A(1) against Umphress, outweighing any past circumstances. Chief among them is the Commission's striking refusal to disavow future enforcement against Umphress.[25] The Commission has stated that it "cannot guarantee that there will never be any future disciplinary proceeding" against Umphress and that it "has not been called upon to make, nor has it made, any representations that no proceeding could ever occur in the future, nor has [it] prejudged what the outcome of any future proceeding might be." In addition, the broad "universe of potential complainants" increases the risk that Umphress will be investigated or disciplined under Canon 4A(1). *See Susan B. Anthony List*, 573 U.S. at 164. The "authority to file a complaint with the Commission is not limited to" "state officials" but extends more broadly to citizens.[26] That any citizen may file an ethics complaint against Umphress and trigger an investigation of his conduct further heightens the specter of enforcement.

In sum, Umphress has alleged an imminent injury in fact.

---

quotation marks and citation omitted)).

[25] *See id.* at 165 (observing that "respondents do not have disavowed enforcement if petitioners make similar statements in the future" when concluding that "the specter of enforcement is . . . substantial"); *Humanitarian L. Project*, 561 U.S. at 16 (holding plaintiffs' claims justiciable because, *inter alia*, "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (when concluding that the claims were justiciable, remarking that because "the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices," "[a]ppellees are thus not without some reason in fearing prosecution for violation of the ban on specified forms of consumer publicity").

[26] *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 325, 338 (5th Cir. 2020) (noting that "the entire University community has been encouraged to and has funneled into the CCRT hundreds of wide-ranging complaints" when concluding that no compelling contrary evidence refuted the credible threat of enforcement).

No. 20-11216

2.

Umphress has also shown that his "injury was caused by the defendant." Umphress alleges that the Commission's potential enforcement of Canon 4A(1) imposes a chilling effect on his speech, expressive conduct, and religious exercise.[27] Therefore, the Commission is the cause of Umphress's alleged injury.

3.

Finally, Umphress has demonstrated that his "injury would likely be redressed by the requested judicial relief."

Umphress requests three forms of relief, all of which are likely to redress his claimed injury.[28] He seeks relief (1) declaring the Commission's interpretation of Canon 4A(1) unconstitutional and (2) enjoining its enforcement against him (claims 2 through 4). A declaratory judgment and injunction would plainly redress Umphress's injury. *See Speech First*, 979 F.3d at 338.

Umphress also seeks relief (3) declaring that neither *Obergefell* nor the Constitution requires judges to perform same-sex weddings or, ultimately, to overrule *Obergefell* altogether (claims 1 and 5).

The third form of requested relief, at first glance, bears a less obvious connection to Umphress's injury. But as he points out, without *Obergefell*—which recognized a constitutional right to same-sex marriage[29]—there would

---

[27] *See id.* at 338.

[28] *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (observing that a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" (internal quotation marks omitted) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008))).

[29] *See* 576 U.S. 644, 675–76 (2015).

13

be no legal authority permitting Texas judges to perform same-sex weddings, because Texas law defines marriage as the union of one man and one woman and declares same-sex marriages contrary to public policy and void.[30]  If a court were to declare that *Obergefell* does not require judges to perform same-sex weddings, or if the Supreme Court were to overrule *Obergefell* altogether (however likely or unlikely that may be), there would be no same-sex marriage in Texas, and, consequently, the Commission could not discipline judges for refusing to perform them.  Accordingly, that third form of relief is also likely to redress Umphress's claimed injury.

In sum, Umphress has standing to bring his claims in federal court.

## B.

The district court held that Umphress's claims were unripe for judicial consideration.  We disagree.

Ripeness has both constitutional and prudential dimensions. *See DM Arbor Court, Ltd. v. City of Hous.*, 988 F.3d 215, 218 (5th Cir. 2021). "Constitutional ripeness refers to Article III's case-or-controversy requirement, which mandates that an 'actual controversy' exist between the parties 'at all stages of review' in federal court." *Id.* at 218 n.1 (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016)).  "[T]he doctrines of standing and ripeness 'originate' from the same Article III limitation,"[31] and "[a]s the parties acknowledge here, the Article III standing and ripeness issues in this case 'boil down to the same question.'" *MedImmune, Inc, v. Genentech, Inc.*,

---

[30] *See* Tex. Const. art. 1, § 32 and Tex. Fam. Code § 6.204(b) (West 2003), (defining marriage as the union of one man and one woman and declaring same-sex marriage void).

[31] *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))

549 U.S. 118, 128 n.8 (2007). For the same reasons that Umphress has standing to bring his claims, his claims are ripe for review.

"Even when constitutional ripeness is satisfied, however, a court may decide not to hear a case for prudential reasons."[32] Although the Supreme Court has questioned the "continuing vitality of the prudential ripeness doctrine," it has not definitely resolved the matter. *See Susan B. Anthony List*, 573 U.S. at 167. Until it does, we continue to recognize the doctrine.

Prudential ripeness considers the "fitness" of the issues for judicial review or, put differently, "whether the factual record [is] sufficiently developed," as well as potential "hardship to the parties that would result if judicial relief is denied."[33] Both components of prudential ripeness are satisfied. Umphress's claims are fit for judicial decision because they present issues that are "purely legal . . . and will not be clarified by further factual development."[34] Umphress claims (1) that *Obergefell* does not require judges to perform same-sex marriages, (2) that *Obergefell* was wrongly decided, and (3) that the Commission's interpretation and enforcement of Canon 4A(1) is unconstitutional. Moreover, "denying prompt judicial review would impose . . . hardship" on Umphress by "forcing [him] to choose between refraining from" speech, expressive conduct, and religious exercise "on the one hand, or engaging in" those activities "and risking . . . Commission proceedings . . . on the other." *Id.* at 167–68.

In sum, Umphress's claims meet the strictures of constitutional and

---

[32] *DM Arbor Ct.*, 988 F.3d at 218 n.1 (internal quotation marks and citation omitted).

[33] *Susan B. Anthony List*, 573 U.S. at 167; *see also Choice Inc. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

[34] *Susan B. Anthony List*, 573 U.S. at 167 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)).

prudential ripeness. We accordingly reverse the dismissal for want of subject matter jurisdiction.

### C.

While a decision in this court was pending, (1) the Supreme Court of Texas issued *Hensley v. State Commission on Judicial Conduct*,[35] and (2) the Commission withdrew its public warning against Hensley. We requested supplemental briefing on whether either of those intervening events mooted Umphress's appeal. Because neither event affects our ability to provide Umphress his requested relief, his claims are not moot.

"Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Div., Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). "[T]he 'central [mootness] question' is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.'"[36] "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 525 (5th Cir. 2008).

Neither *Hensley* nor the Commission's rescission of its warning affects our ability to provide Umphress relief (should we decide to do so). First, *Hensley* did not address the merits of the case: whether Hensley (or any other judge) has a state-law right to perform only opposite-sex marriages. And because *Hensley* did not address the merits, it did not remove the alleged

---

[35] 692 S.W.3d 184 (Tex. 2024).

[36] *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020) (quoting 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3533 (3d ed. 2020) (cleaned up)).

threat of enforcement against Umphress.  Put succinctly: Nothing in *Hensley* prevents the Commission from disciplining Umphress.  So, we can still provide him relief.

Second, though Umphress's standing arguments are, in part, premised on the Commission's public warning against Hensley, and that warning has since been withdrawn, the Commission has not yet disclaimed any intention to discipline Umphress.  Nor has it issued a state-wide change of policy renouncing any intention to enforce Canon 4A(1) against judges like Umphress.[37]  Absent any assurance that the Commission will not enforce Canon 4A(1) against Umphress, he still faces a threat of harm.

Because a decision from our court could provide meaningful relief to Umphress, the case remains live.

## III.

The district court concluded, in the alternative, that even if Umphress possessed standing and his claims were ripe, the court would have abstained under *Pullman*.  The traditional prerequisites for *Pullman* abstention are satisfied.[38]  At the time the district court entered its judgment of dismissal, the state-law threshold question was pending in a Travis County district court as part of Hensley's state-court litigation against the Commission.  Neverthe-

---

[37] *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009).

[38] *Pullman* requires "a federal constitutional challenge to state action and . . . an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." *Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of L. Comm.*, 283 F.3d 650, 653 (5th Cir. 2002)).  Umphress challenges the constitutionality of state action—the gravamen of his complaint is that the Commission's interpretation and enforcement of Canon 4A(1) are unconstitutional.  And it is unclear whether, as a matter of state law, Canon 4A(1) actually prohibits judges from publicly refusing to perform same-sex weddings for religious reasons while continuing to perform opposite-sex weddings.

less, subsequent developments in the Hensley litigation have made it unlikely that the state courts will answer the underlying state-law question on its merits.  We accordingly decline to abstain.

Our decision not to abstain should not be read as a reversal of the judgment for error.  Instead, intervening circumstances have rendered abstention by this court inappropriate.[39]

The state trial court dismissed based on Hensley's failure to exercise statutory remedies and to comply with statutory notice requirements; various forms of immunity; lack of ripeness; res judicata; and collateral estoppel. Hensley appealed, and the Third Court of Appeals affirmed.[40]  In so holding, it did not reach the substance of Hensley's claims or define the scope of Canon 4A(1).[41]  Hensley petitioned the Supreme Court of Texas, which reversed the procedural dismissals and remanded to the Third Court of Appeals for consideration on the merits, including whether Canon 4A(1) prohibits judges from refusing to conduct same-sex marriages.[42]

But a merits decision in *Hensley* is still far from certain.[43]  The Com-

---

[39] *Cf. Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1032-33 (5th Cir. Unit A June 1981) (holding that intervening developments rendered abstention appropriate while also acknowledging that the district court's decision not to abstain was not erroneous).

[40] *Hensley v. State Comm'n on Jud. Conduct*, No. 03-21-00305-CV, 2022 WL 16640801, at *7 (Tex. App.—Austin Nov. 3, 2022, pet. filed).

[41] *Id.* ("Because the trial court lacked jurisdiction to consider Hensley's claims under the [Texas Religious Freedom Restoration Act] and the [Texas Uniform Declaratory Judgments Act], and because Hensley failed to establish ultra vires claims against the Officials, the court did not err in granting the plea to the jurisdiction and dismissing the case. Accordingly, we affirm the trial court's judgment.").

[42] *Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 201–02 (Tex. 2024).

[43] *See id.* at 209 (Young, J., concurring) (doubting that the Commission has any remaining reason to pursue the case on the merits).

No. 20-11216

mission is claiming before the Third Court of Appeals that the case is moot because the Commission has since withdrawn its warning against Hensley.[44] And an alternative course for the Commission would be to renounce its view that "[Hensley's] marriage-referral policy violates [Canon 4A(1)]." *Hensley*, 692 S.W.3d at 205 (Blacklock, J., concurring).

Because we are uncertain whether *Hensley* will provide an answer to our question, we decline to abstain.[45]

Nevertheless, in appropriate instances, there is a preferable alternative to *Pullman* abstention.[46] Under Texas Rule of Appellate Procedure 58, we may certify determinative state-law questions lacking controlling precedent to the Supreme Court of Texas. *See* Tex. R. App. P. 58.1. Certification allows us to pose the "novel state-law question . . . directly to the State's highest court," thereby "reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." *Arizonans for Off. Eng.*, 520 U.S. at 76. "The decision of whether to certify a question lies within this court's sound discretion."[47]

---

[44] Brief for Appellee at 10, *Hensley v. State Comm'n on Jud. Conduct*, No. 03-21-00303-CV (Tex. App.—Austin 2024).

[45] *See Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998) (noting that before abstaining, a court "must carefully assess the totality of the circumstances presented by a particular case," including "the costs of delay pending state court adjudication" (internal quotation marks and citation omitted)); *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 76 (1997) (describing certification, in contrast to abstention, as "increasing the assurance of gaining an authoritative response" on a novel state-law question).

[46] *See Young v. Hosemann*, 598 F.3d 184, 192 (5th Cir. 2010) (characterizing certification as "preferable to 'the more cumbersome and . . . problematic [*Pullman*] abstention doctrine'" (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 668 (5th Cir. 2006) (Dennis, J., dissenting))).

[47] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 290 (5th Cir.

No. 20-11216

When making that decision, we have often—but not invariably[48]—considered

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.[49]

Umphress's case satisfies each of our certification criteria. First, "[i]t poses a res nova, determinative question of Texas law." *Id.* Second, "the dispute presents . . . issues of state law peculiarly calling for the exercise of judgment by the state courts."[50] The case implicates Texas's compelling interest in maintaining an impartial judiciary and probes the contours of judicial impartiality in a context "laden with value judgments and fraught with implications for First Amendment rights."[51] Third, there are no practical barriers to certification, as "[w]e can formulate discrete issues for consideration, and the Supreme Court of Texas has been prompt in its responses."[52]

Accordingly, we certify the following question to the Supreme Court

---

2012).

[48] *See, e.g.*, *Dillon Gage, Inc. v. Certain Underwriters at Lloyds*, 992 F.3d 401, 402–06 (5th Cir. 2021) (certifying a question but without mentioning the discretionary certification factors).

[49] *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020) (internal quotation marks and citation omitted).

[50] *McKesson v. Doe*, 592 U.S. 1, 5 (2020) (per curiam).

[51] *Id.* at 6; *see* TEX. CODE OF JUD. CONDUCT, Canon 4A(1); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 457 (2015) ("States have a compelling interest in preserving public confidence in their judiciaries.").

[52] *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 333 (5th Cir. 2018).

No. 20-11216

of Texas:

> Does Canon 4A(1) of the Texas Code of Judicial Conduct prohibit judges from publicly refusing, for moral or religious reasons, to perform same-sex weddings while continuing to perform opposite-sex weddings?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified.

\*     \*     \*

For the foregoing reasons, we REVERSE the judgment of dismissal for want of subject matter jurisdiction, and we CERTIFY to the Supreme Court of Texas the question identified above. This panel will retain jurisdiction to decide the case following the decision of the Supreme Court of Texas responding to this certification.